FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★ MAR 20 2014 ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
BRINSLEY HARPER,

              Plaintiff,

    -against-

BROOKLYN CHILDREN'S CENTER,

              Defendant.
----------------------------------------------------------------X

ORDER
12-CV-4545 (SJF)(GRB)

FEUERSTEIN, District Judge:

Pending before the Court are the objections of plaintiff Brinsley Harper ("plaintiff") to a Report and Recommendation ("the Report") of the Honorable Gary R. Brown, United States Magistrate Judge, dated January 2, 2014, recommending that I grant the motion of defendant Brooklyn Children's Center ("defendant") seeking dismissal of the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief. For the reasons stated herein, so much of the Report as finds that a plaintiff must allege "an adverse employment action," defined as "a 'materially adverse change' in the terms and conditions of employment," in order to establish a retaliation claim pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*, (Report at 4-6), and that plaintiff "fails to allege any adverse employment actions taken by defendant," (Report at 7), is rejected, but the Report is otherwise accepted in its entirety.

I.     Standard of Review

Rule 72 of the Federal Rules of Civil Procedure permits magistrate judges to conduct proceedings on dispositive pretrial matters without the consent of the parties. Fed. R. Civ. P.

1

72(b); see Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42, 46 (2d Cir. 2002). Any portion of a report and recommendation on dispositive matters to which a specific, timely objection has been made is reviewed *de novo*. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); see Arista Records, LLC v. Doe 3, 604 F.3d 110, 116 (2d Cir. 2010). However, the court is not required to review the factual findings or legal conclusions of the magistrate judge as to which no proper objections are interposed. See Thomas v. Arn, 474 U.S. 140, 150, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010) ("[A] party waives [judicial] review of a decision in a magistrate judge's report and recommendation if the party fails to file timely objections designating the particular issue."); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003) ("As a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point.")

General objections, or "objections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original papers will not suffice to invoke de novo review * * * [because] [s]uch objections would reduce the magistrate's work to something akin to a meaningless dress rehearsal." Owusu v. New York State Insurance, 655 F. Supp. 2d 308, 313 (S.D.N.Y. 2009) (alterations, quotations and citations omitted); see also Butto v. Collecto, Inc., 290 F.R.D. 372, 379 (E.D.N.Y. 2013) ("In a case where a party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." (quotations and citation omitted)); Menking ex rel. Menking v. Daines, 287 F.R.D. 174, 177 (S.D.N.Y. 2012) (accord). To accept the report and recommendation of a magistrate judge to which such general or perfunctory objections are made, or to which no specific, timely objection has been made, the

2

district judge need only be satisfied that there is no clear error apparent on the face of the record. See Fed. R. Civ. P. 72(b); Spence v. Superintendent, Great Meadow Correctional Facility, 219 F.3d 162, 174 (2d Cir. 2000) (a court may review a report to which no timely objection has been interposed to determine whether the magistrate judge committed "plain error."); Praileau v. Fischer, 930 F. Supp. 2d 383, 388 (N.D.N.Y. 2013) (holding that when no objection or only a general objection is made to a portion of a magistrate judge's report and recommendation, or an objection merely reiterates the same arguments presented to the magistrate judge, the court subjects that portion of the report and recommendation to clear error review).

Whether or not proper objections have been filed, the district judge may, after review, accept, reject, or modify any of the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); see Sentry Ins. A Mut. Co. v. Brand Management, Inc., 295 F.R.D. 1, 2 (E.D.N.Y. 2013); North Shore-Long Island Jewish Health Care System, Inc. v. MultiPlan, Inc., 953 F. Supp. 2d 419, 424 (E.D.N.Y. 2013).

II.  Objections

Plaintiff contends, *inter alia*, that Magistrate Judge Brown erred: (1) in finding that he "failed to allege any adverse employment taken by the defendant and fails to satisfy the third prong of a valid retaliation claim," (Obj., ¶ 3), because as a result of the September 2009 Notice of Discipline ("2009 NOD") he "fear[ed] and believe[d] that the next strike on [his] chart [he] would have been fired, and * * * would have lost all [his] benefits" and the 2009 NOD "had a detrimental effect on [him], [his] performance and surely the potential of advancement," (Obj., ¶ 5); (2) in finding that the temporal proximity between the protected activity and the adverse actions was insufficient from which to infer a causal connection because only fifty-six (56) days

3

passed between the date that his 2007 federal discrimination action was settled and the 2009 NOD; (3) in "ignor[ing] the other evidence submitted in [his] complaint to support causation," such as the disparate treatment he received in getting the 2009 NOD for policy violations, (Obj., ¶ 22); and (4) in finding that he failed to state a claim for constructive discharge.

Although not raised by plaintiff, so much of the Report as finds that a plaintiff must allege "an adverse employment action," defined as "a 'materially adverse change' in the terms and conditions of employment," in order to establish a Title VII retaliation claim, (Report at 4-6), and that "plaintiff fails to allege any adverse employment actions taken by defendant," (Report at 7), is rejected as clearly erroneous. See Hicks v. Baines, 593 F.3d 159, 165 (2d Cir. 2010) ("Prior decisions of this Circuit that limit unlawful retaliation to actions that affect the terms and conditions of employment * * * no longer represent the state of the law.") In Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006), the Supreme Court rejected any standard treating Title VII's "antiretaliation provision as forbidding the same conduct prohibited by [its] antidiscrimination provision," id. at 67, 126 S. Ct. 2405, and held that the "antiretaliation provision, unlike the substantive [anti-discrimination] provision, is not limited to discriminatory actions that affect the terms and conditions of employment." Id. at 64, 126 S. Ct. 2405. "The scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm," id. at 67, 126 S. Ct. 2405, and "must be construed to cover a broad range of employer conduct." Thompson v. North American Stainless, LP, — U.S. —, 131 S. Ct. 863, 868, 178 L. Ed. 2d 694 (2011); see also Hicks, 593 F.3d at 165 ("[I]t is now clear that Title VII's anti-discrimination and anti-retaliation provisions are not coterminous; anti-retaliation protection is broader and extends beyond workplace-related or employment-related retaliatory acts and harm." (quotations and citation

4

omitted)).

Rather, "[t]o establish a *prima facie* case of unlawful retaliation under Title VII, 'an employee must show that (1) []he was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered *a materially adverse action*; and (4) there was a causal connection between the protected activity and that adverse action.'" Rivera v. Rochester Genesee Regional Transportation Authority, — F.3d —, 2014 WL 518791 (2d Cir. Feb. 10, 2014) (emphasis added; alteration in original) (quoting Lore v. City of Syracuse, 670 F.3d 127, 157 (2d Cir. 2012)); see also Tepperwien v. Entergy Nuclear Operations, Inc., 663 F.3d 556, 567 (2d Cir. 2011) ("Title VII * * * prohibits an employer from taking 'materially adverse' action against an employee because the employee opposed conduct that Title VII forbids or the employee otherwise engaged in protected activity.") In Burlington Northern, the Supreme Court held that in order to establish a "materially adverse action," "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern, 548 U.S. at 68, 126 S. Ct. 2405 (citation and quotation marks omitted); see also Hicks, 593 F.3d at 169 ("No longer must the alleged retaliatory act bear on the terms or conditions of employment; the proper inquiry now is whether 'the employer's actions [were] harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" (alteration in original) (quoting Burlington Northern, 548 U.S. at 57, 126 S. Ct. 2405)). "Still, '[a]ctions that are "trivial harms"– i.e., "those petty slights or minor annoyances that often take place at work and that all employees experience"– are not materially adverse.'" Rivera, — F.3d —, 2014 WL 518791 (alteration in original) (quoting Tepperwien, 663 F.3d at 568 (quoting Burlington Northern, 548 U.S. at 68,

126 S. Ct. 2405)); see also Hicks, 593 F.3d at 165 (accord). "Title VII * * * does not set forth a general civility code for the American workplace." Burlington Northern, 548 U.S. at 68 (quotations and citation omitted). Thus, for example, "[p]ersonality conflicts at work that generate antipathy and snubbing by supervisors and co-workers are not actionable." Tepperwien, 663 F.3d at 571 (alterations, quotations and citations omitted). Moreover, "[t]he antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." Burlington Northern, 548 U.S. at 67, 126 S. Ct. 2405; see also Hicks, 593 F.3d at 165 (accord).

"[M]aterial adversity is to be determined objectively, based on the reactions of a reasonable employee." Rivera, — F.3d —, 2014 WL 518791 (citing Burlington Northern, 548 U.S. at 69-70, 126 S.Ct. 2405); see also Thompson, — U.S. —, 131 S. Ct. at 868 (holding that Title VII's antiretaliation "provision's standard for judging harm must be objective"); Hicks, 593 F.3d at 165 ("[B]y considering the perspective of a *reasonable* employee, [Burlington Northern] bespeaks an objective standard." (emphasis in original)). "'Context matters,' as some actions may take on more or less significance depending on the context." Tepperwien, 663 F.3d at 568 (quoting Burlington Northern, 548 U.S. at 69, 126 S. Ct. 2405); see also Thompson, — U.S. —, 131 S. Ct. at 868 ("Given the broad statutory text and the variety of workplace contexts in which retaliation may occur, Title VII's antiretaliation provision is simply not reducible to a comprehensive set of clear rules.") "Alleged acts of retaliation must be evaluated both separately and in the aggregate, as even trivial acts may take on greater significance when they are viewed as part of a larger course of conduct." Tepperwien, 663 F.3d at 568; see also Hicks, 593 F.3d at 165 (accord).

Nonetheless, plaintiff does not allege "any discrete actions that 'well might have

6

dissuaded a reasonable worker from making or supporting a charge of discrimination,'" Rivera, — F.3d —, 2014 WL 518791, after either the commencement of his discrimination action in this Court, under docket number 07-cv-591, on February 9, 2007 ("the 2007 discrimination action") or its conclusion on July 9, 2009, following the parties' execution of a stipulation of settlement on July 7, 2009. Without more, no reasonable jury could conclude that two (2) disciplinary citations, i.e., the 2009 NOD charging him with abandoning his post, violating defendant's Safety Department Policy and Procedure and not being in uniform while on duty, which was ultimately dismissed; and the November 11, 2009 counseling memorandum addressing an email he sent about an error made during a fire drill, might have "dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern, 548 U.S. at 68, 126 S. Ct. 2405; see, e.g. Rivera, — F.3d —, 2014 WL 518791 (finding that no reasonable jury could conclude that the two citations for insubordination, without more, constituted a materially adverse action); Tepperwien, 663 F.3d at 570 (finding that the counseling the plaintiff received was not a material adverse action as a matter of law because, *inter alia*, it did not place him in an active disciplinary process; "was merely a discussion of a legitimate safety concern" "below even a warning or reprimand;" and "in the context of the issuance of a 'counseling memo,' * * * criticism of an employee (which is part of training and necessary to allow employees to develop, improve and avoid discipline) is not an adverse employment action.") Since plaintiff fails to allege any facts from which it may reasonably be inferred that he suffered a materially adverse action by defendant, the complaint fails to state a plausible Title VII retaliation claim.

Even assuming, *arguendo*, that plaintiff suffered a materially adverse action by defendant, Magistrate Judge Brown correctly found that he "failed to allege the temporal proximity required to establish causation." (Report at 8). Contrary to plaintiff's contention, for purposes of

determining temporal proximity, the relevant period "is measured from the date of the 'employer's knowledge of [the] protected activity,'" Kim v. Columbia University, 460 Fed. Appx. 23, 25 (2d Cir. Feb. 6, 2012) (summary order) (alteration in original) (quoting Clark County School District v. Breeden, 532 U.S. 268, 273, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001)), i.e., from the date plaintiff filed his discrimination complaint in federal court in September 2007, as alleged in his complaint, (Compl., ¶ 7). See Id. (rejecting the plaintiff's argument on appeal "that the temporal proximity between [the alleged adverse action in May 2007] and the April 2007 settlement proceedings in his then-pending discrimination case was sufficient to permit an inference of retaliation" and finding that the relevant period for purposes of determining temporal proximity began to run from the date the plaintiff filed his discrimination claim in federal court, or even earlier, when he initially filed a complaint against his employer with the EEOC, as that is when the employer learned of the protected activity). Accordingly, Magistrate Judge Brown correctly relied upon the date plaintiff commenced the 2007 discrimination action to conclude that plaintiff "has failed to allege the temporal proximity required to establish causation." (Report at 8).

Although the Second Circuit "ha[s] not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action[,]" Summa v. Hofstra University, 708 F.3d 115, 128 (2d Cir. 2013), it has found that a "temporal gap of almost two years between the date of [the] protected activity and the alleged retaliation [to be] too great to give rise to an inference of causation." Harrison v. U.S. Postal Service, 450 Fed. Appx. 38, 41 (2d Cir. Dec. 8, 2011); see also Breeden, 532 U.S. at 273-74, 121 S. Ct. 1508 ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an

8

adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close,' * * *. Action taken * * * twenty months later suggests, by itself, no causality at all." (citations omitted)); Sanchez v. Connecticut Natural Gas Co., 421 Fed. Appx. 33, 35 (2d Cir. Apr. 29, 2011) (finding insufficient evidence to give rise to an inference of causal connection between the plaintiff's protected speech and his subsequent termination at least two years later). Thus, Magistrate Judge Brown correctly found that "[s]tanding alone, the approximately two years between plaintiff's 2007 federal action and defendant's alleged retaliation in 2009 do not support an inference of retaliation because they lack temporal proximity," and that "[g]iven the two-year gap between plaintiff's federal action, and the alleged retaliatory actions, plaintiff cannot rely on temporal proximity to establish the required causality to sustain his retaliation claim." (Report at 7).

Moreover, plaintiff has not alleged any facts from which direct retaliatory animus may reasonably be inferred and his allegations of disparate treatment with respect to the 2009 NOD are insufficient from which to reasonably infer retaliatory intent, particularly since plaintiff admits in his objections that his supervisor first requested the NOD in June 2009, (Obj., ¶¶ 8-10), one (1) month before the parties executed the stipulation of settlement in the 2007 discrimination action, (see Doc. No. 72 in 07-cv-591), thus precluding any finding of a causal connection between the 2009 NOD and the conclusion of the 2007 discrimination action. See, e.g. Slattery v. Swiss Reinsurance America Corp., 248 F.3d 87, 95 (2d Cir. 2001) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise."); Giudice v. Red Robin International, Inc., — Fed. Appx. —, 2014 WL 552668, at * 2 (2d Cir. Feb. 13, 2014) (summary order) (accord); Young v. Westchester County Department of Social Services,

57 Fed. Appx. 492, 495 (2d Cir. 2003) (summary order) ("[W]here the adverse action was already ongoing at the time of the protected activity, or is very similar to another adverse action that was taken before the protected activity, with no other change in relevant circumstances, logic precludes any inference of causation.") Accordingly, the complaint fails to state a plausible Title VII retaliation claim as a matter of law.[1]

Upon *de novo* review of the Report, all motion papers, plaintiff's objections and defendant's response thereto, I accept so much of Magistrate Judge Brown's Report as concludes that plaintiff's constructive discharge "claim fails as well," (Report at 8), for essentially the reasons set forth in the Report. (Report at 8-11). "The inquiry [under 'the constructive discharge doctrine'] is objective: Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?" Pennsylvania State Police v. Suders, 542 U.S. 129, 141, 124 S. Ct. 2342, 159 L. Ed. 2d 204 (2004). "Case law generally focuses on two parts of this standard: the employer's intentional conduct and the intolerable level of the work conditions." Petrosino v. Bell Atlantic, 385 F.3d 210, 229 (2d Cir. 2004). "[I]f a

---

[1] To the extent that plaintiff alleges that he was denied a retirement incentive benefit in or around September 2010, three (3) years after filing the 2007 discrimination action and more than one (1) year after the conclusion of that action, he has failed to plead any facts from which a causal connection may reasonably be inferred, i.e., that he was treated differently from any other similarly situated employee with respect to that act; that there was direct retaliatory animus; or that there was sufficient temporal proximity between that act and the filing, or even the conclusion, of the 2007 discrimination case. See, e.g. Richards-Byers v. New York City Department of Finance 449 Fed. Appx. 55, 57 (2d Cir. Nov. 30, 2011) (summary order) (finding that there was nothing to support an inference of retaliatory intent since there was no circumstantial evidence that the plaintiff was treated differently from any other similarly situated employee, no direct evidence of retaliatory animus, and a period of more than one year between the adverse action and the protected activity); Cody v. County of Nassau, 345 Fed. Appx. 717, 719 (2d Cir. Sept. 16, 2009) (summary order) (finding no causal connection where there was a period of more than one year between the protected activity and the adverse action); Redd v. New York State Division of Parole, 923 F. Supp. 2d 371, 389 (E.D.N.Y. 2012).

plaintiff suing for constructive discharge cannot show specific intent, he or she must at least demonstrate that the employer's actions were 'deliberate' and not merely 'negligen[t] or ineffective[].'" Id. (alterations in original) (quoting Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 74 (2d Cir. 2000)). "Working conditions are intolerable if they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." Serricchio v. Wachovia Securities LLC, 658 F.3d 169, 185 (2d Cir. 2011). "[T]he standard is a demanding one, because 'a constructive discharge cannot be proven merely by evidence that an employee . . . preferred not to continue working for that employer' or that 'the employee's working conditions were difficult or unpleasant.'" Miller v. Praxair, Inc., 408 Fed. Appx. 408, 409 (2d Cir. Nov. 24, 2010) (summary order) (quoting Spence v. Maryland Cas. Co., 995 F.2d 1147, 1156 (2d Cir. 1993)).

The acts of which plaintiff complains, i.e., one NOD and one (1) counseling memorandum[2], "largely amount to the sort of routine disagreements with supervisors or mild criticisms that are simply insufficient to establish the sort of 'intolerable' working conditions necessary to a constructive discharge claim," Miller, 408 Fed. Appx. at 409, particularly since: (1) they did not result in any materially adverse consequences to plaintiff, see, e.g. Petrosino, 385 F.3d at 231 (affirming the dismissal of the plaintiff's constructive discharge claim where, *inter alia*, there was no evidence that the employer wished the employee to resign her position, the conduct at issue did not cause the employee to suffer a loss of pay or change of title and the plaintiff did not demonstrate that quitting was the only way out of her dilemma); and (2) plaintiff worked for almost one (1) year after the 2009 NOD, and ten (10) months after the counseling

---

[2] Plaintiff clearly cannot logically argue that defendant's purported denial of a retirement incentive benefit upon his retirement compelled him to retire.

memorandum, without further incident[3] before filing for retirement. See, e.g. Tepperwien v. Entergy Nuclear Operations, Inc., 606 F. Supp. 2d 427, 447 (S.D.N.Y. 2009), aff'd on other grounds 663 F.3d 556 (2d Cir. 2011) (holding that the plaintiff would not have remained employed with the defendant for more than a year after the second incident of which she complained "[h]ad the working environment become so intolerable that * * * resignation was a fitting response * * *."); Field v. Tonawanda City School District, 604 F. Supp. 2d 544, 567 (W.D.N.Y. 2009) ("Nor could a reasonable juror find * * * that a reasonable employee in Plaintiffs' position would have required approximately one and one-half years of being subjected to defendant's [acts] before deciding that such working conditions were so intolerable as to compel [them] to retire * * *."); Bellom v. Neiman Marcus Group, Inc., 975 F. Supp. 527, 534 n. 6 (S.D.N.Y. 1997) (finding that a constructive discharge claim was not available to the plaintiff because "the only activities which might rise to the level of 'intolerable' had ended approximately eight months prior to plaintiff's resignation.") Accordingly, the complaint fails to state a plausible claim for constructive discharge.

IV. Conclusion

For the reasons set forth herein and in the Report, so much of the Report as finds that a plaintiff must allege "an adverse employment action," defined as "a 'materially adverse change' in the terms and conditions of employment," in order to establish a Title VII retaliation claim, (Report at 4-6), and that plaintiff "fails to allege any adverse employment actions taken by

---

[3] Although plaintiff repeatedly refers to the conduct of which he complains as "ongoing," he fails to allege any specific conduct occurring between the counseling memorandum and his retirement that contributed to his decision to retire.

12

defendant," (Report at 7), is rejected, but the Report is otherwise accepted in its entirety; defendant's motion seeking dismissal of plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is granted; and the complaint is dismissed in its entirety with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for relief. The Clerk of the Court shall enter judgment in favor of defendant, close this case and serve notice of entry of this Order pursuant to Rule 77(d)(1) of the Federal Rules of Civil Procedure.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

SO ORDERED.

s/ Sandra J. Feuerstein

SANDRA J. FEUERSTEIN
United States District Judge

Dated: March 20, 2014
Central Islip, New York